### WOODEN v. WOODEN.

No. 12793—Opinion Filed July 7, 1925.

Rehearing Denied Sept. 8, 1925.

(Syllabus.)

1. **Divorce—Voluntary Appearance — Waiver of Service.**

Section 242, C. O. S. 1921, provides that "An acknowledgment on the back of the summons, or the voluntary appearance of a defendant, is equivalent to service." Held, under the facts disclosed by the evidence in the instant cause, where defendant signed a paper entitled in the cause, in the terms of which the defendant waived service of summons and entered an appearance in the action, and the same was filed in said cause, a voluntary appearance was made by the defendant.

2. **Husband and Wife—Fraud—Relief in Equity.**

The relation of husband and wife is one of special confidence and trust, requiring in their dealings with each other the utmost good faith and frankness. Where either one is false to the other and fraudulently or through coercion procures an unjust advantage, chancery will relieve against the transaction.

3. **Divorce—Decree Procured by Fraud— Power to Vacate.**

Courts of general jurisdiction have inherent power, independent of any statutory provisions, and in divorce cases no less than in other cases, to set aside and annul any judgment or decree procured by fraud and deceit of the successful party, practiced upon the complaining party to the action, and the court.

Error from District Court, Tulsa County; W. B. Williams, Judge.

Petition by Estelle L. Wooden to vacate decree of divorce granted to Frank M. Wooden, and from an adverse judgment she brings error. Reversed, and remanded, with directions.

West, Sherman, Davidson & Moore, for plaintiff in error.

Breckenridge, Bostick & Daniel, for defendant in error.

RILEY, J. F. M. Wooden brought action in divorce in the district court of Tulsa county, Okla., against his wife, Estelle L. Wooden. On February 13, 1919, there was entered a decree of divorce, the same being the day upon which the petition was filed. No summons was issued or served upon the defendant, but on the same day of the decree a waiver of service and appearance was filed.

On August 14, 1920, Estelle L. Wooden filed her petition in the above-named court, praying that the decree of divorce granted to Frank M. Wooden be vacated, set aside, and held for naught, and that the property agreement contained in said decree be set aside, and for other relief.

On April 25, 1921, the court rendered judgment upon the petition of plaintiff and the answer of Frank Wooden, permitting plaintiff, Estelle Wooden, to interpose her defense to the petition of Frank Wooden in the original cause for divorce.

On May 17, 1921, Frank Wooden's motion for new trial was, by the court, sustained and the judgment vacating the original judgment was set aside and a new trial was granted. On June 25, 1921, the motion to set aside the original judgment was overruled and appeal was perfected to this court.

Mrs. Wooden did not appear in court in the original action, either in person or by an attorney, but it is contended by defendant in error that the waiver of service of summons, as filed, constituted a voluntary appearance as contemplated by section 242, C. O. S. 1921, which is as follows:

"An acknowledgment on the back of the summons, or the voluntary appearance of the defendant, is equivalent to service."

The instrument by which it is claimed service of summons is waived and a general appearance is made, appears in the record as follows:

"State of Oklahoma, County of Tulsa, ss. In the District Court. Waiver Entry of Appearance.

"Comes now the defendant in the above en-

titled and numbered cause and hereby waives the issuance, service and return of summons in this cause and voluntarily enters her appearance herein and consents that said cause may be tried forthwith.

"Said defendant further states that the plaintiff and defendant herein have adjusted and settled all of their property rights by virtue of a certain written contract entered into between said parties under date of 12th day of Feb., 1919, and defendant hereby asks the court to approve and confirm said property settlement, in accordance with the terms of said written contract.

"Dated this 13 day of Feb. 1919.

"Estelle L. Wooden, Defendant.

"R. E. Fountain,

"C. M. Douglas,

"Witnesses."

From an examination of the evidence we think the trial court was justified in concluding that Mrs. Wooden signed the waiver. The waiver on its face shows that F. M. Wooden is plaintiff and Estelle L. Wooden is defendant in an action in the district court of Tulsa county, and then follows the statement that the defendant in the above entitled and numbered cause waives the issuance of service and return of summons in the cause and voluntarily enters her appearance therein.

In the case of Salina National Bank v. Prescott et al. (Kan.) 57 Pac. 121, wherein the president of a corporation filed with the clerk of the court a writing which was, omitting the title:

"The issuance and service of summons in the above entitled action is hereby waived, and the said defendant, the Lone Star Plaster Company, hereby enters its voluntary appearance in said action"

—it was held that a voluntary appearance was thereby made, regardless of whether the instrument was filed with the petition or afterward, in term time or vacation. The Supreme Court of Kansas said, in construing their statute, identical with that of Oklahoma, section 242, supra:

"We do not interpret the words 'voluntary appearance of a defendant' to mean an appearance in court, in term time, personally, or by attorney. It has been the uniform custom, both in the district courts and in this court for defendants to waive, in writing, the issuing and service of summons, and enter their appearance in cases about to be commenced. It would be overturning a long continued course of practie to hold that the court's obtain no jurisdiction where appearance is entered in this way."

See, also, Humphreys v. Humphreys, Mor-ris (Iowa) 359; Russell v. Craig (Colo.) 51 Pac. 1017.

9 R. C. L. 212, announces the rule as to waiver of process, as follows:

"There would seem to be no reason why the defendant in an action for divorce cannot waive service of process upon him subject to the right of the court as in other cases to dismiss the action where collusion between the parties appears."

We, therefore, hold that the instrument signed by the plaintiff in error was, within the meaning of the statute, "the voluntary appearance of a defendant," as effective on its face as if an acknowledgment had been made on the back of the summons, or as if a formal pleading had been filed in the case.

It is contended by plaintiff in error that the waiver and entry of appearance was obtained by fraud and deceit and without advising the defendant of the pendency of said cause or of the intention of plaintiff to secure a divorce.

It appears from the evidence that the petition for divorce was filed with the court immediately after arrangements had been made with the judge to hear the cause on that particular day and that the waiver and entry of appearance was filed subsequent to this arrangement. The attorney for F. M. Wooden prepared the waiver and entry of appearance and gave it to Mr. Wooden for the signature of his wife. The defendant had no attorney or representative. Mrs. Wooden never saw the petition upon which the divorce was granted until long afterward. She testified that she did not know a divorce was contemplated and did not know the decree had been granted for more than a year after its entry upon the record; that upon being informed that her husband had been divorced she employed an attorney to examine the records and he failed to find the decree; she later employed an other attorney, who found the decree. She thereupon began this action.

We have held the waiver and entry of appearance met the requirements. It could have been more explicit and less confusing by the omission of the paragraph in reference to the property settlement. It should have indicated the nature of the action. The document could have been used for the purpose of waiving the issuance and service of summons and the appearance in an action for separate maintenance and support, wholly eliminating the feature of divorce, and been in keeping with the agreements and understanding between the parties. The waiver refers to an agreement of property rights entered into by the parties the day prior to

the signing of the "waiver". This agreement, as it appears in the record, is one to live separate and apart "as though" said parties were unmarried. It speaks at length of the marriage relation existing between the parties and it implies that the parties are to remain husband and wife, although provision is made to live separately and to own property individually.

After F. M. Wooden had left his home and wife in 1918, he returned and took up his abode at his home during the Christmas holidays. His daughter, Mayme, testified as to a conversation with her father, in which her father told her of his intention of securing a divorce from her mother, and admonished her not to tell her mother, because he knew of her horror of divorces, and that she, Mrs. Wooden, would never give her consent. There is no evidence to disclose that at the time she signed the waiver Mr. Wooden informed his wife of the allegations or cause of the contemplated suit, or of the arrangements to have the cause immediately heard by the court. Mrs. Wooden's testimony negatives this. The written agreement between the parties, of the previous day, is to the contrary, in implying a continuance of the marriage status; likewise the prior agreements and conduct of the parties; so, too, the testimony of the daughter.

In this case, an action for divorce wherein the state is an interested party in that the rights of the plaintiff and defendant are not isolated from the general interest of society in preserving the marriage relation as the foundation of the home and the state, we say that the conduct of F. M. Wooden amounts to a fraud upon his wife and upon the state as represented by the court in the administration of justice.

In the case of Young v. Young, 17 Minn. 181, Gil. 153, it is said:

"In an action for divorce, any course of action by plaintiff which is intended to and does prevent the defendant from setting up and establishing a defense to the action is a fraud upon the administration of justice, as well as upon the defendant, for which the judgment thereby procured will be set aside."

In the case of Meldrum v. Meldrum (Colo.) 24 Pac. 1083, the court said:

"The relationship of husband and wife is one of special confidence and trust, requiring the utmost good faith and frankness in their dealings with each other; and where either one is false to the other and fraudulently or through coercion procures an unjust advantage, chancery may relieve against the transaction."

It will be borne in mind that F. M. Wooden, the plaintiff in the divorce action, did not, in any of the methods provided by law, deal with his wife at arm's length. The exact methods by law provided are: First, service of summons; second, acknowledgment on the back of a summons; third, service by publication; and fourth, entry of appearance as provided for by section 242, supra, which may be done in a number of ways.

Wooden, while occupying the confidential position of husband, knowing all the time of his wife's horror of divorce and knowing that she would never give her consent to a divorce, held out to her the hopes of reconciliation and induced her to sign a number of agreements to live separate and apart and to settle their property rights, and within 24 hours after the last agreement was signed he again called his wife over the telephone and had her come to his lawyer's office—she, at the time, sick in body and in mind—and, as one of the witnesses to her signature testified, "She looked like a death's head," and in tears, having in mind the agreement to live separate and apart, secured from her by her husband the day prior, he secured her signature to a document which waived her right to defend against the unknown accusations against her in a cause of action unnamed in the document itself.

Lord Hardwick said:

"Fraud is infinite and, were courts of equity once to lay down rules, how far they would go and no further, in extending the relief against it, the jurisdiction would be cramped and perpetually eluded by new schemes which the fertility of man's invention would contrive."

It is contended by the defendant in error that the plaintiff below, by seeking to vacate the judgment in the original action upon nonjurisdictional as well as jurisdictional grounds, thereby entered a general appearance and cured the jurisdictional defects. It will be observed that here the plaintiff proceeded by petition, verified by affidavit, setting forth the judgment, the grounds to vacate it, and the defense to the action, and that summons was issued, as in the commencement of an action, as contemplated by section 812, Comp. Okla. Stat. 1921. It is a prerequisite, under the section mentioned, that the party seeking relief set out nonjurisdictional grounds. The plaintiff in this, her action, invokes the jurisdiction of the court and this action necessarily refers to the former cause, and the plaintiff is, by this action, subject to the jurisdiction of the court in the former action as though plaintiff

had raised nonjurisdictional matters in the former action, by motion. All defects and irregularities in the service and return of process are waived just as effectively as if an appearance has been made before the judgment, but such appearance in no way militates against the authority of the court to hear and determine the application to vacate the judgment because of fraud, as alleged, in obtaining it. 4 C. J., 1365; Miles v. State, 10 Ind. 114; Fisk v. Thorp, 60 Neb. 713, 84 N. W. 79.

In the case of Yorke v. Yorke (N. Dak.) 55 N. W. 1095, it is said:

"But, however the law may be, as touching mere irregularities, we are confident that no subsequent voluntary appearance can cure or condone fraud, such as appears upon the record before us. A court record, based upon a legal fraud, may demand obedience while it stands, but it is idle to talk of the sanctity of such a record. Whatsoever is tainted with fraud—a court record no less than a contract—must fall before the clear evidence of the fraud by which it was established. This principle can never be departed from without making the law the instrument of the perpetration of injustice, oppression and crime. This is familiar law. But see Black, Judgm., paragraph 321, and cases cited."

The judgment of the trial court must be reversed, with directions to set aside the judgment and vacate the decree of divorce, and to allow the defendant 20 days from the entry of such order in which to plead thereto.

NICHOLSON, C. J., and MASON, PHELPS, LESTER, and CLARK, JJ., concur.

Note.—See under (1) 19 C. J. p. 104, § 260; 9 R. C. L. p. 212. (2) 30 C. J. p. 712, § 313. (3) 19 C. J. p. 166, § 415.